.IN THE CIRCUIT COURT OF THE 17TH CIRCUIT IN BROWARD COUNTY, FLORIDA

**VINCENT MCINTYRE &**
**CONSTANCE MCINTYRE**

GENERAL JURISDICTION DIVISION

　　　　Plaintiff,

CASE NO.: CACE09033456 21

vs.

**SMITH PROPERTY HOLDINGS**
**NEW RIVER VILLAGE, L.L.C., a**
**Delaware Limited Liability Company,**
**D/B/A NEW RIVER VILLAGE, and**
**MONTECITO NEW RIVER, LLC,**
**a Delaware Limited Liability Company.**

TRUE COPY
JUDGE JOHN J. MURPHY, III

JUN 2 8 2010

　　　　Defendants.
_____/

## AMENDED COMPLAINT

　　　　**COMES NOW,** Plaintiffs, **VINCENT MCINTYRE & CONSTANCE MCINTYRE,** (hereinafter referred to as "PLAINTIFFS") by and through undersigned counsel, and hereby sues Defendants, **SMITH PROPERTY HOLDINGS NEW RIVER VILLAGE, L.L.C., a** Delaware Limited Liability Company, D/B/A NEW **RIVER VILLAGE,** (hereinafter referred to as "SMITH PROPERTY") and **MONTECITO NEW RIVER, L.L.C, a** Delaware Limited Liability Company (hereinafter referred to as "MONTECITO") and states as follows:

## JURISDICTION

1. This is an action for damages which exceeds the sum of FIFTEEN THOUSAND

　　DOLLARS ($15,000.00) exclusive of interests, costs and attorneys fees.

**EXHIBIT B**

## PARTIES

2. PLAINTIFFS, VINCENT and CONSTANCE MCINTYRE, are residents of Broward County, Florida and are otherwise sui juris.

3. At all times material hereto PLAINTIFFS, VINCENT and CONSTANCE MCINTYRE, have been and are legally married.

4. At all times material hereto DEFENDANT, "SMITH PROPERTY", was a Limited Liability Company incorporated and doing business in the State of Delaware authorized by the State of Florida to transact business in Florida with its Principal place of business being located in Broward County, Florida and is otherwise sui juris.   Additionally, DEFENDANT, "SMITH PROPERTY", at all times material hereto did operate in the State of Florida under the fictitious name of New River Village.

5. At all times material hereto DEFENDANT, "MONTECITO", was a Limited Liability Company incorporated and doing business in the State of Delaware authorized by the State of Florida to transact business in Florida with its Principal place of business being located in Broward County, Florida and is otherwise sui juris.

6. Venue is proper in Broward County Florida pursuant to Florida Statute §47.011 (Florida Statutes), in that it is where the property is located and all of the acts complained of occurred.

## GENERAL ALLEGATIONS

7. DEFENDANT, "SMITH PROPERTY", purchased the property located at 520 S.E. 5th Avenue, Fort Lauderdale, Florida 33301 on or about November 15th,

2002, and at all material times herein was the Owner/landlord of said property and engaged in the apartment rental business for said property until August 2, 2005.

8. Defendant, "SMITH PROPERTY", owned certain real estate and/or an apartment buildings constructed on the real estate at a building located at 520 S.E. 5th Avenue, Apartment 1212., Ft Lauderdale, Florida 33301 and was engaged in the business of renting the apartment in such building up and until its sale of the real property at issue to DEFENDANT, "MONTECITO", on or about August 2, 2005.

9. On or about August 2, 2005, DEFENDANT, MONTECITO, purchased the property located at 520 S.E. 5th Avenue, Fort Lauderdale, Florida 33301 from DEFENDANT, "SMITH PROPERTY".

10. DEFENDANTS, "SMITH PROPERTY" AND " MONTECITO", at all times material hereto were landlords of PLAINTIFFS as defined by "The Florida Residential Landlord and Tenant Act" (hereinafter referred to as the "Act"), Florida Statute 83.43 and subject to and governed by the provisions, liabilities, rights and duties imposed on Landlords by said "Act" towards Residential Tenants.

11. At all times material hereto PLAINTIFFS were residential tenants as defined by "The Florida Residential Landlord and Tenant Act", Florida Statute 83.43 and subject to and governed by the provisions, liabilities, rights and duties imposed on Residential Tenants by said "Act".

12. DEFENDANT, MONTECITO, pursuant to the terms and conditions of the Purchase and Sale Agreement and other related agreements and affidavits entered into between the Co-Defendants regarding the Purchase and Sale of the property

herein at issue assumed all of its obligations of the landlord pursuant to terms of lease signed by PLAINTIFFS and its subsequent month to month tenancy. Additionally, DEFENDANT, MONTECITO, further assumed all of the duties and obligations towards PLAINTIFFS pursuant to the Florida Chapter 83 of the "The Florida Residential Landlord and Tenant Act", including but not limited to, those responsibilities enumerated in **Florida Statute §83.51,** which require a landlord to comply with the local Property Maintenance Code and other related maintenance and repair issues.

13. DEFENDANT, "SMITH PROPERTY" originally leased the premises herein at issue, 520 S.E. 5th Avenue, Apartment 1212., Ft Lauderdale, Florida 33301, to PLAINTIFFS on or about December 1st, 2002 for a one year term.

14. PLAINTIFFS continued renewing their lease agreement with DEFENDANT, "SMITH PROPERTY" for Apartment 1212 every year upon the expiration of the lease term, that being on or about December 31st, 2005. Thereafter, Plaintiffs remained in possession and occupying the unit herein in question on a month to month tenancy with Defendant, "MONTECITO", until Plaintiffs vacated the premises on or about March, 2006.

15. PLAINTIFFS' last renewal of their lease agreement with DEFENDANT, "SMITH PROPERTY", occurred on April 25, 2005, for a lease term commencing on May 1, 2005 and expiring on December 31, 2005. A Copy of PLAINTIFFS' lease is herein attached as Composite Exhibit "A."

16. PLAINTIFFS, prior to their last renewal of the lease agreement set-forth in paragraph 14 above, had verbally complained on numerous occasions to

DEFENDANT, "SMITH PROPERTY", thru its employees and/or agents of the existence of excessive moisture and water leaks to their unit.

17. On or about June 16, 2005, PLAINTFFS' hired a mold inspector, Inspect It, Inc., who on June 21, 2005 subsequently advised PLAINTIFFS that PLAINTIFFS' unit contained elevated levels of mold and/or mildew and provided its written findings/report on June 22, 2005 to PLAINTIFFS.

18. PLAINTIFF'S on June 21, 2005 became aware for the first time of the presence of mold and/or mildew in their unit.

19. On June 21, 2005 PLAINTIFFS sent a written correspondence to DEFENDANT, "SMITH PROPERTY", informing it that they were experiencing mold proliferation, and that they required someone from DEFENDANT, "SMITH PROPERTY", to inspect their unit and conduct the appropriate remedial measures. See attached June 21, 2005 letter incorporated herein by reference as PLAINTIFFS' Composite Exhibit "B".

20. On June 22, 2005 DEFENDANT, "SMITH PROPERTY", thru its employees and/or agents inspected PLAINTIFFS' unit and found signs of possible mold growth. DEFENDANT, "SMITH PROPERTY", by and thru its employees and/or agent, discovered spots and stains on PLAINTIFFS' clothes located in their master bedroom closet and a leak under PLAINTIFFS' kitchen sink. See attached June 22, 2005 herein by reference as PLAINTIFF'S Composite Exhibit

--------

21. As a direct and proximate result of DEFENDANTS actions PLAINTIFFS were forced to evacuate the unit and reside in a hotel from June 23, 2005 thru July 13,

2005 incurring a cost of $_____ for their stay at the hotel. (See attached

invoice of Sheraton Suites herein referenced as Composite Exhibit _____)

22. Subsequent to their inspection, DEFENDANT, "SMITH PROPERTY", allegedly

corrected the following areas:

    a.  On July 7, 2005 DEFENDANT, "SMITH PROPERTY", cleaned the walls

       in the master bedroom closet, primed walls and re-painted, removed AC

       Coils and fan blower motor, removed all vents, and removed master closet

       door and primed and re-painted it.

    b.  On July 11, 2005 DEFENDANT, "SMITH PROPERTY", had apartment

       cleaned and dusted.

    c.  On July 12, 2005 DEFENDANT, "SMITH PROPERTY", had outside

       contractor dry cleaned the carpet throughout the residential home.

    See attached July 12, 2005 herein by reference as PLAINTIFF'S Composite

    Exhibit _____.

23. At this time, Plaintiff was under a good faith belief that pursuant to the

correspondence of July 12, 2005 that the problem had been completely remedied

and fully resolved by DEFENDANT, "SMITH PROPERTY".

24. Despite the aforementioned action taken by DEFENDANT, "SMITH

PROPERTY" set-forth paragraph 22 above, On July 21, 2005, PLAINTIFFS

continued to experience mold and/or mildew problems with their unit and with

their health and again began verbally notifying DEFENDANT, "SMITH

PROPERTY", thru its employees and/or agents that a problem with the unit

continued to exist and requesting further testing to be performed. PLAINTIFFS

received no response or action from DEFENDANT, "SMITH PROPERTY" despite PLAINTIFFS repeated verbal requests.

25. DEFENDANT, "SMITH PROPERTY", failed to comply with PLAINTIFFS' requests for DEFENDANT, "SMITH PROPERTY", to timely inspect the property when it knew or should have known that water leaks and mold/mildew problems were present on the property, hire a certified mold inspector to perform the quality inspection test, make the appropriate remedial measures and/or relocate PLAINTIFFS to another location so as to prevent any health risks or injuries to PLAINTIFFS.

26. After DEFENDANT, "MONTECITO" assumed the obligations of PLAINTIFFS' lease on or about August 2, 2005, PLAINTIFFS also notified DEFENDANT, "MONTECITO" thru its employees and/or agents of the previously mentioned conditions and problems existing with PLAINTIFFS rental unit. (See attached Correspondence of August 2, 2005 herein attached as Exhibit _____ ).

27. DEFENDANT, "MONTECITO" also failed to comply with PLAINTIFFS' requests to timely inspect the property when it knew or should have known that water leaks and mold/mildew problems were present on the property, hire a certified mold inspector to perform the quality inspection test, make the appropriate remedial measures and/or relocate PLAINTIFFS to another location so as to prevent any health risks or injuries to PLAINTIFFS.

28. On or around August 18, 2005, PLAINTIFFS hired Inspect It Inc. to perform an air quality inspection report due to DEFENDANTS, "SMITH PROPERTY" AND MONTECITO'S", failure to properly inspect the property for the presence of

mold and/or mildew despite PLAINTIFFS numerous verbal and written requests to do so. The assessment report was provided to DEFENDANTS, "SMITH PROPERTY" and "MONTECITO" which detailed the following deficiencies in the quality of the air in the subject property and the existence of the following molds and/or fungi: Cladosporium, Curvularia, Penicillium/Aspergillus, Unid Hyphomycetes, other Basidiospores, and other Ascospores. Inspect It Inc., recommended that a certified licensed A/C duct cleaning company inspect the air conditioning ducts in order to clean any remnants of mold.

29. As a direct and proximate result of DEFENDANTS actions PLAINTIFFS were forced to evacuate the unit and relocate to a different location.

30. Despite PLAINTIFFS' numerous requests to DEFENDANTS, "SMITH PROPERTY" and "MONTECITO", to re-inspect the unit, and despite the fact that it knew or should have known of the health risks associated with mold, DEFENDANTS, "SMITH PROPERTY" and "MONTECITO", failed to take the necessary corrective remedial measures to protect the health and safety of the occupants of the subject property.

31. This action arises from the acts and/or omissions of the owners, partners, management, staff, employees and/or agents of DEFENDANTS, "SMITH PROPERTY" AND "MONTECITO" in failing to properly, timely and diligently investigate and identify mold and/or fungi infestation at PLAINTIFFS' unit located at New River, in failing to subsequently report, address, and remediate the mold/mildew and its adverse consequences once discovered, and in failing to warn and/or disclose to PLAINTIFFS of its existence when DEFENDANTS knew

or should have known of its existence upon the exercise of reasonable due diligence.

## COUNT I- NEGLIGENCE AS TO DEFENDANT "SMITH PROPERTY"

32. PLAINTIFFS reaffirm and re-allege paragraphs 1 through 31 as if fully set-forth herein.

33. SMITH PROPERTY, lessors, owed a duty of care to PLAINTIFFS, lessees, to provide fit and habitable living conditions. Accordingly, SMITH PROPERTY had a duty to exercise reasonable care in maintaining the property in a safe and habitable condition and to correct and repair any dangerous conditions on the premises that could harm PLAINTIFFS health or their enjoyment of the leased premises. Specifically, SMITH PROPERTY owed PLAINTIFFS the following duties:

a. To maintain premises pursuant to Florida Statute §83.51;

b. To Comply with the requirements of applicable building, housing, and health codes;

c. To where there are no applicable building, housing, or health codes, maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition.

d. To protect PLAINTIFFS from mold and/or fungi exposure;

e. To properly and timely remediate the mold and/or fungi contamination in

PLAINTIFFS apartment when DEFENDANT, "SMITH PROPERTY" knew or should have known of its existence with the exercise of reasonable due diligence;

f. To provide PLAINTIFFS with a safe and habitable residential apartment for their use and enjoyment;

g. To relocate PLAINTIFFS to another apartment unit or other location so as to prevent any health risks or injuries to PLAINTIFFS; and

h. To warn PLAINTIFFS of any latent hazards or perils which DEFENDANT, "SMITH PROPERTY" knew or should have known with the exercise of reasonable due diligence.

34. SMITH PROPERTY breached their duty to PLAINTIFFS by:

   a. Failing to maintain safe and proper air quality in the subject property as reflected by Inspect It Inc.'s reports referred to hereinabove;

   b. Failing to comply with all applicable building codes, housing codes and health codes;

   c. Failing to properly and timely remediate the subject premises upon first being notified of the defective condition of the premises in question and the existence of mold and/or fungi.

   d. Failing to properly and timely remediate the subject premises as recommended by Inspect It Inc. despite DEFENDANT, "SMITH PROPERTY'S" knowledge of the urgency to repair and remediate same timely and professionally in light of the continued presence mold and/or fungi;

e.   Failing to maintain the subject property in a reasonably safe condition and to warn PLAINTIFFS of latent hazards and/or perils which were known or should have been known to DEFENDANT, "SMITH PROPERTY" with the exercise of reasonable due diligence, but which were unknown to PLAINTIFFS, notwithstanding DEFENDANT, "SMITH PROPERTY'S" superior position to know of the condition of the property.

f.   Failed to maintain the premises at issue pursuant to Florida Statute §83.51;

g.   Failed to Comply with the requirements of applicable building, housing, and health codes;

h.   Failed to where there are no applicable building, housing, or health codes, maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition.

i.   Failed to protect PLAINTIFFS from mold and/or fungi exposure;

j.   Failed to properly and timely remediate the mold and/or fungi contamination in PLAINTIFFS apartment when DEFENDANT, "SMITH PROPERTY" knew or should have known of its existence with the exercise of reasonable due diligence;

k.   Failed to provide PLAINTIFFS with a safe and habitable residential apartment for their use and enjoyment; and

l.   Failed to relocate PLAINTIFFS to another apartment unit or other location so as to prevent any health risks or injuries to PLAINTIFFS and their personal property.

35. As a direct and proximate result of DEFENDANT, "SMITH PROPERTY'S" actions PLAINTIFFS have incurred the following damages:

a.   Suffered serious, painful and permanent bodily injuries, including but not limited to, respiratory problems which required medical attention;

b.   Incurred medical bills;

c.   Incidental expenses;

d.   Past and Future Wage Loss;

e.   Loss of the ability to earn money in the future;

f.   Inspection fees;

g.   Damage to their Personal Property;

h.   Reimbursement of the rental fees paid to PLAINTIFFS for an unfit and uninhabitable apartment unit during the time periods herein at issue;

i.   PLAINTIFFS were forced to evacuate the unit and relocate to a different location, thus incurring relocation expenses;

j.   PLAINTIFFS have been deprived of the use and enjoyment of the leased premises during the time period herein in question as set-forth above.

k.   Expenses to correct, repair, restore, decontaminate or replace household goods and clothing, as well as other personal property damaged, destroyed and/or lost as a direct result of the conditions created by the defects,

deficiencies, and failures or by the evaluation, correction, replacement and/or improper remediation of the defects, deficiencies, and failures;

l.  Expenses for physicians and other health care professionals, for pharmaceuticals, and for the treatment of physical injuries caused by the contaminated environment resulting from the defects, deficiencies, and failures existing within and around the buildings as well as the improper remediation of the condition created by the defects, deficiencies and failure;

m.  PLAINTIFFS have sustained pain, suffering, mental and emotional anguish;

n.  PLAINTIFFS have sustained severe and substantial emotion distress;

o.  PLAINTIFFS have sustained extreme inconvenience, trauma, stress, hardship and profound disruption of their daily routine;

p.  As a further proximate result of the negligence of defendants, and each of them, plaintiff has incurred other and will incur further medical and incidental expenses for the care and treatment of these injuries, the exact amount of which is unknown at the present time.

q.  loss of the capacity for the enjoyment of life;

r.  PLAINTIFFS were, are and will be required to undergo medical treatment and to incur medical costs and expenses in order to alleviate injuries, pain and suffering;

s. PLAINTIFFS were, are and will be precluded from engaging in normal activities and pursuits, including a loss of ability to earn money and of actual earnings;

WHEREFORE, Plaintiff demands judgment in excess of this Court's minimal jurisdictional limits against DEFENDANT, "SMITH PROPERTY", for compensatory damages, costs, and any equitable relief deemed proper and just under the circumstances.

## COUNT II- NEGLIGENCE AS TO DEFENDANT, "MONTECITO"

36. PLAINTIFFS reaffirm and re-allege paragraphs 1 through 31 as if fully set-forth herein.

37. "MONTECITO", lessors, owed a duty of care to PLAINTIFFS, lessees, to provide fit and habitable living conditions. Accordingly, "MONTECITO", had a duty to exercise reasonable care in maintaining the property in a safe and habitable condition and to correct and repair any dangerous conditions on the premises that could harm PLAINTIFFS health or their enjoyment of the leased premises. Specifically, "MONTECITO", owed PLAINTIFFS the following duties:

a. To maintain premises pursuant to Florida Statute §83.51;

b. To Comply with the requirements of applicable building, housing, and health codes;

c. To where there are no applicable building, housing, or health codes, maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of

resisting normal forces and loads and the plumbing in reasonable working condition.

d. To protect PLAINTIFFS from mold and/or fungi exposure;

e. To properly and timely remediate the mold and/or fungi contamination in PLAINTIFFS apartment when DEFENDANT "MONTECITO", knew or should have known of its existence with the exercise of reasonable due diligence;

f. To provide PLAINTIFFS with a safe and habitable residential apartment for their use and enjoyment;

g. To relocate PLAINTIFFS to another apartment unit or other location so as to prevent any health risks or injuries to PLAINTIFFS; and

h. To warn PLAINTIFFS of any latent hazards or perils which the DEFENDANT, "MONTECITO", knew or should have known with the exercise of reasonable due diligence.

38. "MONTECITO", breached their duty to PLAINTIFFS by:

    a. Failing to maintain safe and proper air quality in the subject property as reflected by Inspect It Inc.'s reports referred to hereinabove;

    b. Failing to comply with all applicable building codes, housing codes and health codes;

    c. Failing to properly and timely remediate the subject premises upon first being notified of the defective condition of the premises in question and the existence of mold and/or fungi.

d.  Failing to properly and timely remediate the subject premises as recommended by Inspect It Inc. despite "MONTECITO'S", knowledge of the urgency to repair and remediate same timely and professionally in light of the continued presence mold and/or fungi;

e.  Failing to maintain the subject property in a reasonably safe condition and to warn PLAINTIFFS of latent hazards and/or perils which were known or should have been known to "MONTECITO", with the exercise of reasonable due diligence, but which were unknown to PLAINTIFFS, notwithstanding "MONTECITO'S" superior position to know of the condition of the property.

f.  Failed to maintain the premises at issue pursuant to Florida Statute §83.51;

g.  Failed to Comply with the requirements of applicable building, housing, and health codes;

h.  Failed to where there are no applicable building, housing, or health codes, maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition.

i.  Failed to protect PLAINTIFFS from mold and/or fungi exposure;

j.  Failed to properly and timely remediate the mold and/or fungi contamination in PLAINTIFFS apartment when "MONTECITO", knew or should have known of its existence with the exercise of reasonable due diligence;

k. Failed to provide PLAINTIFFS with a safe and habitable residential apartment for their use and enjoyment; and

l. Failed to relocate PLAINTIFFS to another apartment unit or other location so as to prevent any health risks or injuries to PLAINTIFFS and their personal property.

39. As a direct and proximate result of "MONTECITO'S" actions PLAINTIFFS have incurred the following damages:

a. Suffered serious, painful and permanent bodily injuries, including but not limited to, respiratory problems which required medical attention;

b. Incurred medical bills;

c. Incidental expenses;

d. Past and Future Wage Loss;

e. Loss of the ability to earn money in the future;

f. Inspection fees;

g. Damage to their Personal Property;

h. Reimbursement of the rental fees paid to PLAINTIFFS for an unfit and uninhabitable apartment unit during the time periods herein at issue;

i. PLAINTIFFS were forced to evacuate the unit and relocate to a different location, thus incurring relocation expenses;

j. PLAINTIFFS have been deprived of the use and enjoyment of the leased premises during the time period herein in question as set-forth above.

k. Expenses to correct, repair, restore, decontaminate or replace household goods and clothing, as well as other personal property damaged, destroyed

and/or lost as a direct result of the conditions created by the defects, deficiencies, and failures or by the evaluation, correction, replacement and/or improper remediation of the defects, deficiencies, and failures;

l. Expenses for physicians and other health care professionals, for pharmaceuticals, and for the treatment of physical injuries caused by the contaminated environment resulting from the defects, deficiencies, and failures existing within and around the buildings as well as the improper remediation of the condition created by the defects, deficiencies and failure;

m. PLAINTIFFS have sustained pain, suffering, mental and emotional anguish;

n. PLAINTIFFS have sustained severe and substantial emotion distress;

o. PLAINTIFFS have sustained extreme inconvenience, trauma, stress, hardship and profound disruption of their daily routine;

p. As a further proximate result of the negligence of defendants, and each of them, plaintiff has incurred other and will incur further medical and incidental expenses for the care and treatment of these injuries, the exact amount of which is unknown at the present time.

q. loss of the capacity for the enjoyment of life;

r. PLAINTIFFS were, are and will be required to undergo medical treatment and to incur medical costs and expenses in order to alleviate injuries, pain and suffering;

s. PLAINTIFFS were, are and will be precluded from engaging in normal activities and pursuits, including a loss of ability to earn money and of actual earnings;

WHEREFORE, Plaintiff demands judgment in excess of this Court's minimal jurisdictional limits against DEFENDANT "MONTECITO" for compensatory damages, costs, and any equitable relief deemed proper and just under the circumstances.

## COUNT III- VIOLATION OF THE FLORIDA RESIDENTIAL LANDLORD AND TENANT ACT AS TO DEFENDANT, "SMITH PROPERTY"

40. PLAINTIFFS reaffirm and re-allege paragraphs 1 through 31 as if fully set-forth herein.

41. At all times in which DEFENDANT, "SMITH PROPERTY" was the owner of the property in question herein DEFENDANT, "SMITH PROPERTY" was a landlord to PLAINTIFF'S as defined by The Florida Residential Landlord and Tenant Act, Florida Statute 83.43.

42. DEFENDANT, "SMITH PROPERTY" was the landlord as defined by The Florida Residential Landlord and Tenant Act, Florida Statute 83.43.

43. PLAINTIFFS are tenants as defined by The Florida Residential Landlord and Tenant Act, Florida Statute § 83.43.

44. Upon information and belief, DEFENDANT, "SMITH PROPERTY" violated the provisions of The Florida Residential Landlord and Tenant Act by failing to do the following:

a. Failing to maintain safe and proper air quality in the subject property as reflected by Inspect It Inc.'s reports referred to hereinabove;

b. Failing to comply with all applicable building codes, housing codes and health codes;

c. Failing to properly and timely remediate the subject premises upon first being notified of the defective condition of the premises in question and the existence of mold and/or fungi.

d. Failing to properly and timely remediate the subject premises as recommended by Inspect It Inc. despite DEFENDANT, "SMITH PROPERTY'S" knowledge of the urgency to repair and remediate same timely and professionally in light of the continued presence mold and/or fungi;

e. Failing to maintain the subject property in a reasonably safe condition and to warn PLAINTIFFS of latent hazards and/or perils which were known or should have been known to DEFENDANT, "SMITH PROPERTY" with the exercise of reasonable due diligence, but which were unknown to PLAINTIFFS, notwithstanding DEFENDANT, "SMITH PROPERTY'S" "superior position to know of the condition of the property.

f. Failed to maintain the premises at issue pursuant to Florida Statute §83.51;

g. Failed to Comply with the requirements of applicable building, housing, and health codes;

h. Failed to where there are no applicable building, housing, or health codes, maintain the roofs, windows, screens, doors, floors, steps, porches,

exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition.

    i.   Failed to protect PLAINTIFFS from mold and/or fungi exposure;

    j.   Failed to properly and timely remediate the mold and/or fungi contamination in PLAINTIFFS apartment when DEFENDANT, "SMITH PROPERTY" knew or should have known of its existence with the exercise of reasonable due diligence;

    k.   Failed to provide PLAINTIFFS with a safe and habitable residential apartment for their use and enjoyment; and

    l.   Failed to relocate PLAINTIFFS to another apartment unit or other location so as to prevent any health risks or injuries to PLAINTIFFS and their personal property.

45. As a direct and proximate result of DEFENDANT, "SMITH PROPERTY'S" violations of The Florida Residential Landlord and Tenant Act, PLAINTIFFS have sustained injuries and damages, as set forth in paragraph 39 above.

46. Additionally, PLAINTIFFS are entitled to recover their reasonable court costs, including attorney's fees from DEFENDANT, "SMITH PROPERTY", pursuant to Florida Statute § 83.48.

WHEREFORE, Plaintiffs demands judgment in excess of this Court's minimal jurisdictional limits against DEFENDANT, "SMITH PROPERTY" for compensatory damages, pre and post-judgment interest, attorneys fees, costs, and any equitable relief deemed proper and just under the circumstances.

<u>COUNT IV- VIOLATION OF THE FLORIDA RESIDENTIAL LANDLORD</u>

<u>AND TENANT ACT AS TO DEFENDANT "MONTECITO"</u>

47. PLAINTIFFS reaffirm and re-allege paragraphs 1 through 31 as if fully set-forth herein.

48. At all times in which DEFENDANT "MONTECITO" was the owner of the property in question herein DEFENDANT "MONTECITO" was a landlord to PLAINTIFF'S as defined by "The Florida Residential Landlord and Tenant Act", Florida Statute 83.43.

49. DEFENDANT "MONTECITO" was the landlord as defined by The Florida Residential Landlord and Tenant Act, Florida Statute 83.43.

50. PLAINTIFFS are tenants as defined by The Florida Residential Landlord and Tenant Act, Florida Statute § 83.43.

51. Upon information and belief, DEFENDANT "MONTECITO" violated the provisions of "The Florida Residential Landlord and Tenant Act", Florida Statute Chapter 83, by failing to do the following:

   a. Failing to maintain safe and proper air quality in the subject property as reflected by Inspect It Inc.'s reports referred to hereinabove;

   b. Failing to comply with all applicable building codes, housing codes and health codes;

   c. Failing to properly and timely remediate the subject premises upon first being notified of the defective condition of the premises in question and the existence of mold and/or fungi.

d. Failing to properly and timely remediate the subject premises as recommended by Inspect It Inc. despite DEFENDANT "MONTECITO'S" knowledge of the urgency to repair and remediate same timely and professionally in light of the continued presence mold and/or fungi;

e. Failing to maintain the subject property in a reasonably safe condition and to warn PLAINTIFFS of latent hazards and/or perils which were known or should have been known to DEFENDANT "MONTECITO" with the exercise of reasonable due diligence, but which were unknown to PLAINTIFFS, notwithstanding DEFENDANT "MONTECITO'S" superior position to know of the condition of the property.

f. Failed to maintain the premises at issue pursuant to Florida Statute §83.51;

g. Failed to Comply with the requirements of applicable building, housing, and health codes;

h. Failed to where there are no applicable building, housing, or health codes, maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition.

i. Failed to protect PLAINTIFFS from mold and/or fungi exposure;

j. Failed to properly and timely remediate the mold and/or fungi contamination in PLAINTIFFS apartment when DEFENDANT "MONTECITO" knew or should have known of its existence with the exercise of reasonable due diligence;

k. Failed to provide PLAINTIFFS with a safe and habitable residential apartment for their use and enjoyment; and

l. Failed to relocate PLAINTIFFS to another apartment unit or other location so as to prevent any health risks or injuries to PLAINTIFFS and their personal property.

52. As a direct and proximate result of DEFENDANT "MONTECITO'S" violations of The Florida Residential Landlord and Tenant Act, PLAINTIFFS have sustained injuries and damages, as set forth in paragraph 39 above.

53. Additionally, PLAINTIFFS are entitled to recover their reasonable court costs, including attorney's fees from DEFENDANT "MONTECITO", pursuant to Florida Statute § 83.48.

WHEREFORE, Plaintiffs demands judgment in excess of this Court's minimal jurisdictional limits against DEFENDANT "MONTECITO" for compensatory damages, pre and post-judgment interest, attorneys fees, costs, and any equitable relief deemed proper and just under the circumstances.

## COUNT V

## BREACH OF CONTRACT AS TO DEFENDANT, "SMITH PROPERTY"

54. PLAINTIFFS reaffirm and re-allege paragraphs 1 through 31 as if fully set-forth herein.

55. DEFENDANT "SMITH PROPERTY" agreed to and owed a duty to provide PLAINTIFFS housing that was safe, fit, free from major structural defects and suitable for human habitation pursuant to the residential lease agreement, previously incorporated herein as PLAINTIFFS Composite Exhibit "A", entered

into between DEFENDANT, "SMITH PROPERTY" and PLAINTIFFS which was subsequently assumed by DEFENDANT, "MONTECITO".

56. After PLAINTIFFS assumed occupancy of their leased premises, while living and residing in the premises, they became aware that their personal property was contaminated with mold growth.

57. Additionally, PLAINTIFFS have each experienced health problems as a result of their exposure to the chronically contaminated environmental conditions.

58. PLAINTIFFS notified DEFENDANT "SMITH PROPERTY" of the mold contamination and water leak problems associated with their apartment units as set-forth in paragraphs 16 thru 28 above.

59. DEFENDANT "SMITH PROPERTY" breached their residential lease agreement with PLAINTIFFS and Florida Statute Chapter 83 by failing to do the following:

    a.  Failing to maintain safe and proper air quality in the subject property as reflected by Inspect It Inc.'s reports referred to hereinabove;

    b.  Failing to comply with all applicable building codes, housing codes and health codes;

    c.  Failing to properly and timely remediate the subject premises upon first being notified of the defective condition of the premises in question and the existence of mold and/or fungi.

    d.  Failing to properly and timely remediate the subject premises as recommended by Inspect It Inc. despite DEFENDANT "SMITH PROPERTY'S" knowledge of the urgency to repair and remediate same

timely and professionally in light of the continued presence mold and/or fungi;

e.  Failing to maintain the subject property in a reasonably safe condition and to warn PLAINTIFFS of latent hazards and/or perils which were known or should have been known to DEFENDANT "SMITH PROPERTY" with the exercise of reasonable due diligence, but which were unknown to PLAINTIFFS, notwithstanding DEFENDANT "SMITH PROPERTY'S" superior position to know of the condition of the property.

f.  Failed to maintain the premises at issue pursuant to Florida Statute §83.51;

g.  Failed to Comply with the requirements of applicable building, housing, and health codes;

h.  Failed to where there are no applicable building, housing, or health codes, maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition.

i.  Failed to protect PLAINTIFFS from mold and/or fungi exposure;

j.  Failed to properly and timely remediate the mold and/or fungi contamination in PLAINTIFFS apartment when DEFENDANT "SMITH PROPERTY'S" knew or should have known of its existence with the exercise of reasonable due diligence;

k.  Failed to provide PLAINTIFFS with a safe and habitable residential apartment for their use and enjoyment; and

l.   Failed to relocate PLAINTIFFS to another apartment unit or other location so as to prevent any health risks or injuries to PLAINTIFFS and their personal property.

60. As a direct and proximate result of DEFENDANT "SMITH PROPERTY" breach of the lease and refusal and failure to maintain the premises in a safe and habitable condition for the duration of the lease, PLAINTIFFS have sustained the damages as set-forth in paragraph 39 above.

61. Additionally, PLAINTIFFS are entitled to recover attorneys fees and costs incurred in this matter pursuant to paragraph 8 of the Residential Lease Agreement and pursuant to Florida Statutes §83.48 and §57.105.

WHEREFORE, Plaintiffs demands judgment in excess of this Court's minimal jurisdictional limits against DEFENDANT, "SMITH PROPERTY", for compensatory damages, pre and post-judgment interest, attorneys fees, costs, and any equitable relief deemed proper and just under the circumstances.

## COUNT VI

### BREACH OF CONTRACT AS TO DEFENDANT "MONTECITO"

62. PLAINTIFFS reaffirm and re-allege paragraphs 1 through 31 as if fully set-forth herein.

63. DEFENDANT "MONTECITO" agreed to and owed a duty to provide PLAINTIFFS housing that was safe, fit, free from major structural defects and suitable for human habitation pursuant to the August 2, 2005 Notice to Residents. Please see correspondence of August 2, 2005 herein previously referred as Composite Exhibit ____.

64. After PLAINTIFFS assumed occupancy of their leased premises, while living and residing in the premises, they became aware that their personal property was contaminated with mold growth.

65. Additionally, PLAINTIFFS have each experienced health problems as a result of their exposure to the chronically contaminated environmental conditions.

66. PLAINTIFFS notified DEFENDANT "MONTECITO" of the mold contamination and water leak problems associated with their apartment units as set-forth in paragraphs 16 thru 28 above.

67. DEFENDANT "MONTECITO" breached their residential lease agreement with PLAINTIFFS and Florida Statute Chapter 83 by failing to do the following:

   a. Failing to maintain safe and proper air quality in the subject property as reflected by Inspect It Inc.'s reports referred to hereinabove;

   b. Failing to comply with all applicable building codes, housing codes and health codes;

   c. Failing to properly and timely remediate the subject premises upon first being notified of the defective condition of the premises in question and the existence of mold and/or fungi.

   d. Failing to properly and timely remediate the subject premises as recommended by Inspect It Inc. despite DEFENDANT "MONTECITO'S" knowledge of the urgency to repair and remediate same timely and professionally in light of the continued presence mold and/or fungi;

   e. Failing to maintain the subject property in a reasonably safe condition and to warn PLAINTIFFS of latent hazards and/or perils which were known or

should have been known to DEFENDANT "MONTECITO" with the exercise of reasonable due diligence, but which were unknown to PLAINTIFFS, notwithstanding DEFENDANT "MONTECITO'S" superior position to know of the condition of the property.

f.   Failed to maintain the premises at issue pursuant to Florida Statute §83.51;

g.   Failed to Comply with the requirements of applicable building, housing, and health codes;

h.   Failed to where there are no applicable building, housing, or health codes, maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition.

i.   Failed to protect PLAINTIFFS from mold and/or fungi exposure;

j.   Failed to properly and timely remediate the mold and/or fungi contamination in PLAINTIFFS apartment when DEFENDANT "MONTECITO" knew or should have known of its existence with the exercise of reasonable due diligence;

k.   Failed to provide PLAINTIFFS with a safe and habitable residential apartment for their use and enjoyment; and

l.   Failed to relocate PLAINTIFFS to another apartment unit or other location so as to prevent any health risks or injuries to PLAINTIFFS and their personal property.

68. The lease that was subsequently assumed by MONTECITO, breached their residential lease agreement with PLAINTIFFS by failing to do the following:

   a. Failing to maintain safe and proper air quality in the subject property as reflected by Inspect It Inc.'s reports referred to hereinabove;

   b. Failing to comply with all applicable building codes, housing codes and health codes;

   c. Failing to properly and timely remediate the subject premises upon first being notified of the defective condition of the premises in question and the existence of mold and/or fungi.

   d. Failing to properly and timely remediate the subject premises as recommended by Inspect It Inc. despite DEFENDANT "MONTECITO'S" knowledge of the urgency to repair and remediate same timely and professionally in light of the continued presence mold and/or fungi;

   e. Failing to maintain the subject property in a reasonably safe condition and to warn PLAINTIFFS of latent hazards and/or perils which were known or should have been known to DEFENDANT "MONTECITO" with the exercise of reasonable due diligence, but which were unknown to PLAINTIFFS, notwithstanding DEFENDANT "MONTECITO'S" superior position to know of the condition of the property.

   f. Failed to maintain the premises at issue pursuant to Florida Statute §83.51;

   g. Failed to Comply with the requirements of applicable building, housing, and health codes;

h. Failed to where there are no applicable building, housing, or health codes, maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition.

i. Failed to protect PLAINTIFFS from mold and/or fungi exposure;

j. Failed to properly and timely remediate the mold and/or fungi contamination in PLAINTIFFS apartment when DEFENDANT "MONTECITO" knew or should have known of its existence with the exercise of reasonable due diligence;

k. Failed to provide PLAINTIFFS with a safe and habitable residential apartment for their use and enjoyment; and

l. Failed to relocate PLAINTIFFS to another apartment unit or other location so as to prevent any health risks or injuries to PLAINTIFFS and their personal property.

69. As a direct and proximate result of DEFENDANT "MONTECITO" breach of the lease and refusal and failure to maintain the premises in a safe and habitable condition for the duration of the lease, PLAINTIFFS have sustained the damages as set-forth in paragraph 39 above.

70. Additionally, PLAINTIFFS are entitled to recover attorneys fees and costs incurred in this matter pursuant to paragraph 8 of the Residential Lease Agreement and pursuant to Florida Statutes §83.48 and §57.105.

WHEREFORE, Plaintiffs demands judgment in excess of this Court's minimal jurisdictional limits against DEFENDANT "MONTECITO" for compensatory damages, pre and post-judgment interest, attorneys fees, costs, and any equitable relief deemed proper and just under the circumstances.

**COUNT VII**

**BREACH OF ORAL AGREEMENT AS TO DEFENDANT "MONTECITO"**

71. PLAINTIFFS reaffirm and re-allege paragraphs 1 through 31 as if fully set-forth herein.

72. PLAINTIFFS continued renewing their lease agreement with DEFENDANT, "SMITH PROPERTY" for Apartment 1212 every year upon the expiration of the lease term, that being on or about December 31st, 2005. Thereafter, Plaintiffs remained in possession and occupying the unit herein in question on a month to month tenancy with Defendant, "MONTECITO", until Plaintiffs vacated the premises on or about March, 2006.

73. DEFENDANT "MONTECITO" agreed to and owed a duty to provide PLAINTIFFS housing that was safe, fit, free from major structural defects and suitable for human habitation pursuant to the August 2, 2005 Notice to Residents and Chapter 83 of the Florida Statute. Please see correspondence of August 2, 2005 herein previously referred as Composite Exhibit _____.

74. After PLAINTIFFS assumed occupancy of their leased premises, while living and residing in the premises, they became aware that their personal property was contaminated with mold growth.

75. Additionally, PLAINTIFFS have each experienced health problems as a result of their exposure to the chronically contaminated environmental conditions.

76. PLAINTIFFS notified DEFENDANT "MONTECITO" of the mold contamination and water leak problems associated with their apartment units as set-forth in paragraphs 16 thru 28 above.

77. DEFENDANT "MONTECITO" breached their month to month oral tenancy agreement with PLAINTIFFS and Florida Statute Chapter 83 by failing to do the following:

    a.   Failing to maintain safe and proper air quality in the subject property as reflected by Inspect It Inc.'s reports referred to hereinabove;

    b.   Failing to comply with all applicable building codes, housing codes and health codes;

    c.   Failing to properly and timely remediate the subject premises upon first being notified of the defective condition of the premises in question and the existence of mold and/or fungi.

    d.   Failing to properly and timely remediate the subject premises as recommended by Inspect It Inc. despite DEFENDANT "MONTECITO'S" knowledge of the urgency to repair and remediate same timely and professionally in light of the continued presence mold and/or fungi;

    e.   Failing to maintain the subject property in a reasonably safe condition and to warn PLAINTIFFS of latent hazards and/or perils which were known or should have been known to DEFENDANT "MONTECITO" with the exercise of reasonable due diligence, but which were unknown to

PLAINTIFFS, notwithstanding DEFENDANT "MONTECITO'S" superior position to know of the condition of the property.

f.  Failed to maintain the premises at issue pursuant to Florida Statute §83.51;

g.  Failed to Comply with the requirements of applicable building, housing, and health codes;

h.  Failed to where there are no applicable building, housing, or health codes, maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition.

i.  Failed to protect PLAINTIFFS from mold and/or fungi exposure;

j.  Failed to properly and timely remediate the mold and/or fungi contamination in PLAINTIFFS apartment when DEFENDANT "MONTECITO" knew or should have known of its existence with the exercise of reasonable due diligence;

k.  Failed to provide PLAINTIFFS with a safe and habitable residential apartment for their use and enjoyment; and

l.  Failed to relocate PLAINTIFFS to another apartment unit or other location so as to prevent any health risks or injuries to PLAINTIFFS and their personal property.

78. As a direct and proximate result of DEFENDANT "MONTECITO" breach of the month to month oral tenancy agreement and refusal and failure to maintain the premises in a safe and habitable condition for the duration of said month to month

tenancy agreement, PLAINTIFFS have sustained the damages as set-forth in paragraph 39 above.

79. Additionally, PLAINTIFFS are entitled to recover attorneys fees and costs incurred in this matter pursuant to Florida Statutes §83.48 and §57.105.

WHEREFORE, Plaintiffs demands judgment in excess of this Court's minimal jurisdictional limits against DEFENDANT "MONTECITO" for compensatory damages, pre and post-judgment interest, attorneys fees, costs, and any equitable relief deemed proper and just under the circumstances.

## COUNT VIII

## LOSS OF CONSORTIUM CLAIM BY PLAINTIFF CONSTANCE MCINTYRE

80. PLAINTIFFS reaffirm and re-allege paragraphs 1 through 31 as if fully set-forth herein.

81. Prior to suffering his injuries, Plaintiff, Constance McIntyre, was able to and did perform all the duties of a healthy, recovering and independent individual, including assisting in maintaining the home, providing love and support, companionship, affection, society, and solace to Plaintiff, Vincent McIntyre.

82. As a direct and proximate result of Defendants negligence, Plaintiff, Constance McIntyre, has sustained injuries which prevent Plaintiff performing the duties in the same scope and manner required of her as a spouse which includes, but is not limited to, the following: housework, participate in family, recreational, or societal activities, provide companionship, affection, society with Plaintiff, Vincent McIntyre.

WHEREFORE, Plaintiff, Constance McIntyre, demands judgment in excess of this Court's minimal jurisdictional limits against Defendants for compensatory damages, pre and post-judgment interest, costs, and any equitable relief deemed proper and just under the circumstances.

## COUNT IX

## LOSS OF CONSORTIUM CLAIM BY PLAINTIFF VINCENT MCINTYRE

83. PLAINTIFFS reaffirm and re-allege paragraphs 1 through 31 as if fully set-forth herein.

84. Prior to suffering his injuries, Plaintiff, Vincent McIntyre, was able to and did perform all the duties of a healthy, recovering and independent individual, including assisting in maintaining the home, providing love and support, companionship, affection, society, and solace to Plaintiff, Constance McIntyre.

85. As a direct and proximate result of Defendants negligence, Plaintiff's, Vincent McIntyre's, has sustained injuries which prevent Plaintiff performing the duties required of him as a spouse in the same scope and manner which includes, but is not limited to, the following: housework, participate in family, recreational, or societal activities, provide companionship, affection, society with Plaintiff, Constance McIntyre.

WHEREFORE, Plaintiff, Vincent McIntyre, demands judgment in excess of this Court's minimal jurisdictional limits against Defendants for compensatory damages, pre and post-judgment interest, costs, and any equitable relief deemed proper and just under the circumstances.

## DEMAND FOR TRIAL BY JURY

PLAINTIFFS demand a trial by jury of all issues so triable as a matter of law on all of the previously set-forth causes of actions.

## RESERVATION OF RIGHT TO SEEK PUNITIVE DAMAGES

Pursuant to Florida Statute §768.72, PLAINTIFFS reserve the right to file an amended complaint seeking punitive damages upon a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages.

## CERTIFICATE OF SERVICE

I HERBY CERTIFY that a true and correct copy was faxed and mailed this 25th day of June, 2010 to: Cindy Shatkin Avidan Esquire, 950 South Pine Island Road, Suite A-150, Plantation, FL 33324 and Michael A. Sastre  Esquire, 2 South Biscayne Boulevard, One Biscayne Tower, Suite 3050, Miami, FL 33131.

KABA LAW GROUP, P.L.L.C.
1840 West 49th Street
Suite 100
Hialeah, Florida 33012
Phone:  (305) 398-4390
Fax:     (305) 398-4209

By: _____
Moises Kaba III, Esq.
Florida Bar No.: 570125